# COMPLAINT

**(for filers who are prisoners without lawyers)**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

JURY TRIAL DEMANDED

(Full name of plaintiff(s))

Matthew James HARRIS, Plaintiff

v.

(Full name of defendant(s))

Brian FOSTER, Warden

MELI, Security Director

WIERENGA, Deputy Warden
Sued Both Individual and official Capacity

Case Number:

**21-C-1011**

(to be supplied by Clerk of Court)

## A.    PARTIES

1.    Plaintiff is a citizen of ___Wisconsin___, and is located at
(State)
Phone # 262-886-3214    P.O. Box 900
2019 Wisconsin Street, Sturtevant, WI 53177
(Address of prison or jail)

(If more than one plaintiff is filing, use another piece of paper.)

2.    Defendant  Brian FOSTER, Warden
(Name)
is (if a person or private corporation) a citizen of ___Wisconsin___

Complaint – 1

A. PARTIES (continued)...

on information and belief ALL PARTIES are CITIZEN(s) of WISCONSIN

3.) Defendant MELI, Security Director WCI WDOC

4.) Defendant WIERENGA, Deputy Warden WCI WDOC

5.) Defendant TORRIA M. VAN BUREN, Dr. WCI WDOC

6.) Defendant BONIS, Social Services Director WCI WDOC

7.) Defendant STARK, Social Worker WCI WDOC

8.) Defendant KRISTINA N. DEBLANC, Dr. WCI WDOC

9.) Defendant DEVONA M. GRUBER, Dr. WCI WDOC

10.) Defendant GAYLE E. GRIFFITH, Dr. WCI WDOC

11.) Defendant YANA PUSICH, Corrections Program Supervisor WCI WDOC

12.) Defendant THEANDER, captain WCI WDOC

13.) Defendant KYLE K. TRITT, captain WCI WDOC

14.) Defendant KEITH M. IMMERFALL, Lieutenant WCI WDOC

15.) Defendant SANCHEZ, Lieutenant WCI WDOC

16.) Defendant JOSEPH D. BEAHM, Sergeant WCI WDOC

17.) Defendant MONGEY, Sergeant WCI WDOC

18.) Defendant CHRISTOPHER L. PASS, Sergeant WCI WDOC

19.) Defendant SMITH, Corrections Officer WCI WDOC

20.) Defendant STANLEY N. RIDLEY, Corrections Officer WCI WDOC

21.) Defendant MARTINEZ, Corrections Officer WCI WDOC

22.) Defendant VOLLMER, Corrections Officer WCI WDOC

23.) Defendant MCCAWLEY, Corrections Officer WCI WDOC

24.) Defendant WHYTE, Corrections Officer WCI WDOC

25.) Defendant O'NEIL, Corrections Officer WCI WDOC

26.) Defendant FISHE, Corrections Officer WCI WDOC

27.) Defendant(s) JOHN/JANE DOE, Staff WCI WDOC

28.) Defendant CHRYSTAL MARCHANT - MELI, Health Services Unit Manager WCI WDOC

29.) Defendant DONNA LARSON, R.N. Nurse Coordinator 4 WCI WDOC

30.) Defendant JEFFREY MANLOVE, Dr. WCI WDOC

31) Defendant NATHAN TAPIO, Advanced Practicianer Nurse Practicianer WCI WDOC

32.) Defendant CORENE GIEBEL, Records Supervisor WCI WDOC

33.) Defendant FARHAT A. KHAN, M.D. Waupun Memorial Hospital, Agnesian Healthcare.

34.) Defendant MICHELLE SCHULZ, R.N. Waupun Memorial Hospital, Agnesian Healthcare.

35.) Defendant WAUPUN MEMORIAL HOSPITAL, 620 W. Brown St., Waupun, WI 53963

36.) Defendant AGNESIAN HEALTHCARE, on information and belief is a private corporation under contract with WDOC to provide medical care and services to inmates confined with WDOC, including Matthew James HARRIS

37.) ALL DEFENDANTS were acting under color of state law and are being sued in BOTH their individual, and their official capacities.

38.) Plaintiff Request(s) the Court to Retain ALL DEFENDANTS THROUGH DISCOVERY, as these Defendants can reasonably be said to have caused Plaintiff to be subjected to a violation of Law, and there is a reasonable expectation that evidence to that effect will be obtained in discovery.
Plaintiff Request(s) that supervisory officials be retained as Defendants for purposes of discovery to identify culpable staff members.

and (if a person) resides at WAUPUN CORRECTIONAL INSTITUTION(WCI) (State, if known)

_200 South Madison St., WAUPUN, WI 53963_

(Address, if known)

and (if the defendant harmed you while doing the defendant's job)

worked for _Wisconsin Department of Corrections (WDOC)_ 3099 East Washington Ave. Madison, WI 53704

(Employer's name and address, if known)

(If you need to list more defendants, use another piece of paper.) Def. continued ...

PARTIES

B.    STATEMENT OF CLAIM

On the space provided on the following pages, tell:
1.    Who violated your rights;
2.    What each defendant did;
3.    When they did it;
4.    Where it happened; and
5.    Why they did it, if you know.

Plaintiff was incarcerated at
Waupun Correctional Institution at all times
relevant to this Complaint.

complaint continued ...

1.) Plaintiff was prescribed and administered the psychotropic medication PAROXETINE ("PAROXETINE") by Wisconsin Department of Corrections ("WDOC") staff member(s).

2.) Plaintiff ingestion of PAROXETINE induced Suicidal Ideation / Self-Harm Ideation.

3.) On September 7, 2018, Plaintiff approached the Waupun Correctional Institution ("WCI") North Cell Hall Sergeants-Cage and informed Sergeant Christopher L. Pass ("Sgt. Pass") that Plaintiff is going to cut his wrists, and kill himself if he does not get help immediately.

4.) A conflict arose when Sgt. Pass (being unconcerned with Plaintiffs well-being) responded by telling Plaintiff to leave, and directed Plaintiff to return to his cell (unaccompanied by staff).

5.) Plaintiff refused to leave, demanding to see Psychological Services Unit ("PSU") staff immediately.

6.) Sgt. Pass threatened, Plaintiff needs to learn to obey staff, and is going to be taught a lesson. Sgt. Pass further threatened Plaintiff by stating, "we don't play by the rules here, it's best you remember that".

3

7.) PSU staff was eventually contacted, Sgt. Pass talked with PSU staff memeber Dr. Kristina N. Deblanc ("PSU Deblanc") who reviewed Plaintiff. Plaintiff was reviewed (in person) by PSU Deblanc for crisis-contact inside the WCI North Cell Hall. During this time PSU Deblanc demonstrated a hostile attitude toward Plaintiff.

8.) Plaintiff informed PSU Deblanc he is going to cut his wrists open and kill himself. Plaintiff requested crisis-counseling be provided to him. PSU Deblanc denied Plaintiffs request to have crisis-counseling provided. PSU Deblanc was made aware of Plaintiffs PAROXETINE medication, and she is educated in the capacity that psychotropic medication(s) may cause adverse-effect(s). PSU Deblanc failed to initiate a referral for a Psychiatry evaluation appointment for medication refinement, PSU Deblanc was aware and knew there was a significant risk of harm to Plaintiff. PSU Deblanc failed to provide Plaintiff with (immediate) access to crisis-counseling. These (in)actions demonstrate inadequate medical care, resulting in (including but not limited to) unreasonable risk of damage to Plaintiffs future health, and contributed to Plaintiffs mental anguish.

4

9.) At approximately 10:30 Am on September 7, 2018, authorized by the Wisconsin Administrative Code Chapter DOC 311.04 PSU Deblanc placed Plaintiff on OBSERVATION STATUS as being dangerous to self. ("OBSERVATION STATUS") Is defined by the Wisconsin Administrative Code Department of Corrections Chapter DOC 311 OBSERVATION STATUS ("W.A.C DOC 311"). This constitutes Plaintiff as having a Serious Medical Need ("SMN").

10.) Plaintiffs confinement in OBSERVATION STATUS was/is required to be monitored at (least every) fifteen-minute close-watch intervals by (DOC) staff member(s), and recorded on (including but not limited to) DOC-112(A) "OBSERVATION OF INMATE-CONTINUED" FORM(s) by the (DOC) staff member(s) responsible for monitoring and recording the Plaintiff in OBSERVATION STATUS.

11.) Plaintiffs confinement in OBSERVATION STATUS was/is required to include appropriate documentation of (significant) incidents involving the Plaintiff be recorded (by staff member(s) involved) on including but not limited to (IRTS020C) Incident Report(s), and these Incident Report(s) are required to be listed on the (IRTS022B) Incident Report Log by offender.

5'

12.) PSU Deblanc then spoke with Sgt. Pass and informed Sgt. Pass that Plaintiff is placed on OBSERVATION STATUS, and will be going to OBSERVATION STATUS Housing in the Restrictive Housing Unit ("RHU").
Sgt. Pass was aware and knew of Plaintiffs SMN.

13.) Sgt. Pass called and notified Lieutenant Keith M. Immerfall ("Lt. Immerfall") of the situation with Plaintiff in the WCI North Cell Hall. Lt. Immerfall arrived at the North Cell Hall (with additional staff) to escort Plaintiff to the RHU for OBSERVATION STATUS Housing.
Lt. Immerfall talked further with Sgt. Pass inside the WCI North Cell Hall. Sgt. Pass, Lt. Immerfall, Corrections Officer Smith ("C.O. Smith") were aware and knew of the Plaintiffs SMN (for being dangerous to self).

14.) Lt. Immerfall stated to Plaintiff, "Hey Harris, just so you know, we had staff place Razor-Blades in your OBSERVATION CELL, make sure you use them Razors to cut yourself up like a fuckin' turkey".

15.) Lt. Immerfall then told C.O. Smith, "our friends Captain Tritt and Sergeant Beahm are handling the details."

6

16.) Plaintiff then looked to and asked C.O. Smith, "Are you going to let them do that to me?"

17.) C.O. Smith then responded by stating to Plaintiff, "Yeah, like he said, we had staff place Razor-Blades in your OBSERVATION CELL, now all you have to do is use them to cut yourself up like a turkey."

18.) Lt. Immerfall and C.O. Smith additionally implicated both Captain Kyle K. Tritt ("Capt. Tritt"), and Sergeant Joseph D. Beahm ("Sgt. Beahm") by stating their Personal Involvement and assistance when they informed Plaintiff they had staff place Razor-Blades in his OBSERVATION CELL, and instructed Plaintiff to use them Razor-Blades to cut himself up like a turkey.

19.) Plaintiff was escorted to WCI RHU for OBSERVATION STATUS Housing.

20.) Plaintiff was placed and confined within a WCI RHU OBSERVATION CELL ("OBS CELL"). (on information and belief the OBS CELL number is A-202.)

7

21.) Plaintiff was placed and confined within the OBS CELL naked, except for a "smock" issued by staff.

22.) Plaintiff found the inside of his OBS CELL unsanitary, the (contents,) walls and surfaces dirty covered with feces. The walls were also covered with disturbing (graffiti) writtings and symbols promoting death and self-harm, inciting occupant/Plaintiff to despair and to enact self-harm.

23.) Confined within the OBS CELL Plaintiff located the Razor-Blades Lt. Immerfall and C.O. Smith informed Plaintiff they had staff place in Plaintiffs OBSERVATION CELL for the purpose of Plaintiff using the Razor-Blades to inflict serious/significant self-harm injuries by cutting himself up like a turkey.

24.) Staffs' extreme (mis)conduct caused Plaintiff to experience severe emotional distress.

8

25.) Confined within the OBS CELL Plaintiff used one of the Razor-Blades provided by staff to obey Lt. Immerfall and C.O. Smith directive(s) to inflict serious/significant self-harm injuries by using the Razor-Blade to cut himself up like a turkey.
Plaintiff cut approximately three-fourths of his EAR(Right)off,
Plaintiff cut open his Wrist(s) (Right and Left),
Plaintiff made approximately five additional cuts to his Arm(Left),
Causing Plaintiff to suffer serious/significant physical pain/injuries and emotional pain/injury.
A remarkable amount of blood exited Plaintiffs injuries.

26.) On September 7, 2018, Plaintiffs OBSERVATION CELL was required to be inspected by staff for contraband, safety, sanitation, and suitability prior to and for Plaintiff confinement within. Corrections Officer Stanley N. Ridley ("C.O. Ridley"), Sgt. Beahm, and Capt. Tritt were assigned to/working/responsible for Plaintiffs OBSERVATION CELL conditions prior to and during Plaintiffs confinement within, including Plaintiffs Health and Personal Safety, and the Plaintiffs resulting injuries due to the conditions of confinement within.

9

27.) On September 7, 2018, C.O. Ridley, Sgt. Beahm, and Capt. Tritt were aware and knew of Plaintiffs SMN for OBSERVATION STATUS placement, and failed to inspect and/or properly prepare/maintain Plaintiffs OBSERVATION CELL for Plaintiffs confinement within.

28.) Plaintiff sought the RHU A-Range Officers attention to show staff that Plaintiff complied with Lt. Immerfall and C.O. Smith directive(s) to use the Razor-Blade(s) provided to cut himself up like a turkey.

29.) Plaintiff showed C.O. Ridley the Razor-Blade and injuries. The Razor-Blade was confiscated and Pictures were taken by staff for evidence.

30.) Plaintiff was taken to WCI RHU Health Services Unit ("HSU") for treatment of his serious/significant self-harm injuries. Plaintiffs injuries were too serious/severe to be treated by WCI HSU. Plantiff was transported to Waupun Memorial Hospital ("WMH") for Emegency Medical Treatment of Plaintiffs injuries.

10

31.) C.O. Ridley filed (IRTS020C) Incident Report #00341060 ("IR #341060"). In the DESCRIPTION OF INCIDENT C.O. Ridley states, "On September 7, 2018 at approximate 12:45 PM. I Officer Ridley was conducting my obs check rounds on upper A Range when ... inmate Matthew Harris #564394 was standing at the window ... waving his hands and I noticed he was bleeding from the head down and I noticed his ear was cut in half and he continued to wave at me and he showed me ... a razor blade ... other staff arrived on the scene ... and escorted him to HSU for treatment ... inmate Harris was escorted to Waupun Memorial Hospital for more treatment. the razor blade was removed from inmate Harris cell after the incident and confiscated and pictures were taken by staff for evidence "

32.) IR #341060 Pictures taken by staff for evidence include but are not limited to the following :
- Razor - Blade placed on top of the sink within Plaintiffs OBS CELL
- Plaintiffs Blood throughout inside of Plaintiffs OBS CELL
- Plaintiffs physical injuries of his
  - EAR (Right)
  - WRIST(S) (Right & Left)
  - ARM (Left)

11

33.) IR # 341060 identifies Capt. Tritt and Sgt. Beahm as "staff Involved".

34.) IR # 341060 with Pictures taken by staff for evidence (identified/described in paragraph(s) # 31, 32, 33) supports Lt. Immerfall statement(s) (identified/described in paragraph(s) # 14, 15, 17, 18).

35.) IR # 341060 with Pictures taken by staff for evidence (identified/described in paragraph(s) # 31, 32, 33) supports C.O. Smith statement(s) (identified/described in paragraph(s) # 17, 18).

36.) Capt. Tritt Personal Involvement with Lt. Immerfall and C.O. Smith violation(s) against Plaintiff is supported by fact(s) including but not limited to those identified/described in paragraph(s) # 14, 15, 17, 18, 22, 23, 25, 26, 27, 31, 32, 33,

37.) Sgt. Beahm Personal Involvement with Lt. Immerfall and C.O. Smith violation(s) against Plaintiff is supported by fact(s) including but not limited to those identified/described in paragraph(s) # 14, 15, 17, 18, 22, 23, 25, 26, 27, 31, 32, 33,

12

38.) IR# 341060 DESCRIPTION OF INCIDENT states, "... other staff arrived on the scene ...". These OTHER staff members were directly involved and required to be listed/identified on IR# 341060. IR# 341060 fails to identify all staff involved as required, concealing the identities of staff involved.

39.) Plaintiff was transported by WDOC WCI Staff member Sergeant Mongey ("Sgt. Mongey") to WMH for Plaintiffs required Emergency Medical Services ("EMS").

40.) At WMH Emergency Room Plaintiff underwent surgery performed by Farhat A. Khan, M.D. ("Dr. Khan") who poorly reattached Plaintiffs EAR (Right). Michelle Schulz, R.N. ("R.N. Schulz") was on duty.

41.) On information and belief WMH is located at : 620 W. BROWN St., WAUPUN, WI 53963

42.) Inside the WMH Emergency Room Sgt. Mongey performed EMS on Plaintiff by treating Plaintiffs Wrist(s) and Arm injuries. Sgt. Mongey searched for Medical supplies in the Emergency Room cupboard/cabinet(s) and asked Dr. Khan and R.N. Shulz where they Keep Medical supplies for Wound care.

13

Eventually Sgt. Mongey located the Medical supplies he wanted and began applying them to Plaintiff Wrist(s) and Arm (Left) injuries, then he filled those injuries with surgical glue of some Kind.

43.) Plaintiff was disturbed by Sgt. Mongey treating his physical injuries. Plaintiff verbally protested Sgt. Mongey to stop administering EMS to Plaintiff. Plaintiff requested that ONLY WMH staff be allowed to provide Plaintiff with Medical services. Sgt. Mongey forcefully continued to treat Plaintiffs injuries against Plaintiffs objection(s) and while Plaintiff was shackled to the WMH Emergency Room bed. Sgt. Mongey stated, "It's alright, I'm trained in this stuff." Sgt. Mongey further stated to Dr. Khan, "It's alright doc, I got this."
Dr. Khan then left the WMH Emergency Room.
These violation(s) to Plaintiff caused Plaintiff physical pain/injury and emotional pain/injury, and exacerbated Plaintiff distress. Sgt. Mongey was aware and Knew that he had no right or authority to administer EMS to Plaintiff inside WMH while he is employed and on-duty as a WDOC Officer. Plaintiff was violated by Sgt. Mongey when Sgt. Mongey administered Medical services to Plaintiff inside WMH by treating Plaintiffs Wrist(s) and Arm (Left) injuries against Plaintiffs will and without Plaintiff consent. Disregarding Plaintiffs verbal objection(s).

14

Plaintiffs wrist(s) and Arm (Left) injuries are still to this day obvious with noticable scars where Sgt. Mongey recklessly filled Plaintiffs injuries with some kind of surgical glue.

44.) Dr. Khan and R.N. Schulz failed to Protect Plaintiff/ Patient from Sgt. Mongey performing illegal medical services on Plaintiff while Plaintiff was a Patient of WMH and in Dr. Khan and R.N. Schulz direct care. Sgt. Mongey, Dr. Khan and R.N. Schulz subjected Plaintiff to (including but not limited to) inadequate medical care. On information and belief Dr. Khan and R.N. Schulz are contracted to service WDOC through Agnesian Healthcare.

45.) On September 7, 2018, at approximately 4:00 PM, Plaintiff was transported from WMH to WCI RHU by Sgt. Mongey.

46.) Capt. Tritt informed Plaintiff he will be placed in/ reconfined to the same OBSERVATION CELL, and continues to remain on OBSERVATION STATUS.

15

47.) Plaintiff informed Capt. Tritt of the (living) conditions
in that OBS CELL (identified/described in paragraph #22)
causing Plaintiff emotional distress in that OBS CELL, and
expressed concern for his injuries becoming infected from the
feces and unsanitary condition(s) of the OBS CELL.
Plaintiff requested Capt. Tritt provide an alternative cell
in which to be confined. Plaintiffs request was denied.
Plaintiff requested Capt. Tritt have the OBS CELL thoroughly
cleaned prior to Plaintiff being reconfined within, but
that request was denied also.
Plaintiff was denied/not permitted cleaning supplies to
clean his OBS CELL while in OBSERVATION STATUS.


48.) Capt. Tritt was aware and Knew of the Plaintiffs
(living) condition(s) in Plaintiffs OBS CELL, that said
(living) condition(s) are Hazardous to Plaintiffs Health,
antithetical to Plaintiffs dignity, Humiliating to Plaintiff,
is not conducive to Plaintiffs mental state and is causing
psychological harm, is a harmful and torturous living
environment for Plaintiff, and that these (living)
condition(s) do not serve a legitimate correctional
purpose.

16

49.) Capt. Tritt reconfined Plaintiff to the same OBS CELL where Plaintiff inflicted serious/significant self-harm injuries.
(on information and belief the OBS CELL number is A-202).

50.) Plaintiff again found the inside of his OBS CELL unsanitary, the (contents,) walls and surfaces dirty covered with feces, the walls were also covered with disturbing (graffiti) writings and symbols promoting death and self-harm, inciting occupant/Plaintiff to despair and enact self-harm.
Plaintiff was naked, except for a "smock" issued by staff.

51.) Capt. Tritt was aware and knew of Plaintiffs SMN for OBSERVATION STATUS placement, and failed to inspect and/or properly prepare/maintain Plaintiffs OBS CELL for Plaintiffs confinement within.

52.) Plaintiffs OBS CELL was required to be inspected by staff for contraband, safety, sanitation, and suitability prior to and for Plaintiffs confinement within. Capt. Tritt was assigned to/working/responsible for Plaintiffs OBS CELL conditions prior to and during Plaintiffs confinement within, including Plaintiffs Health and Personal safety, and the Plaintiffs resulting injuries due to the conditions of confinement within.

17

53.) Plaintiff suffered a lack of heat, clothing, sanitation, sleep, reasonable safety, and medical care in Plaintiffs OBS CELL.

Inside the Plaintiffs (concrete/stone and metal constructed) OBS CELL Plaintiff was subjected to a constant piercingly cold temperature that (caused Plaintiff to shiver and) deprived Plaintiff of sleep. The penetratingly cold surfaces of Plaintiffs OBS CELL caused Plaintiff intense dull aching pain/injury which also deprived Plaintiff of sleep.

The light in Plaintiffs OBS CELL was always on, disrupting Plaintiffs sleep. The unsanitary (living) condition(s) of Plaintiffs OBS CELL (identified/described in paragraph #50) created an unnecessary risk of infection to Plaintiffs injuries, and an unreasonable risk of harm to Plaintiffs Health and Safety.

This Torturous, cold OBS CELL kept Plaintiff deprived of sleep to the point of Mental and Physical exhaustion, exacerbating Plaintiffs severe emotional distress.

Plaintiffs forced exposure to this torturous OBS CELL lasted for a duration of approximately five-days (09-07-2018 through 09-12-2018).

Plaintiff was naked, except for a staff issued "SMOCK". The staff issued "SMOCK" Plaintiff wore was inadequate/insufficient to and did not provide Plaintiff with alternative means of protection from the aforementioned cold, unsanitary condition(s),

18

unnecessary risk of infection to injuries, unreasonable risk of harm to Plaintiffs Health and Safety, pain, and sleep deprivation.

54.) This created a mutually enforcing effect which (also) produced the deprivation of Plaintiffs identified Human need(s) of warmth, sleep, sanitation, Reasonable Safety, Medical care.
Causing Plaintiff physical pain/injury and emotional pain/injury. Exacerbating Plaintiffs severe emotional distress.

55.) On September 10, 2018, at approximately 8:45 Am, PSU Deblanc appeared cell-front to Plaintiffs OBS CELL and was required to perform a "Mental Status Evaluation" required by W.A.C DOC 311. Per DOC 311.05, "Examination of Mental Health placement",
(1) "... The examination shall include a direct personal evaluation and a review of recent relevant information."
Recent relevant information required for PSU Deblanc to review includes but is not limited to DOC-112(A) "OBSERVATION OF INMATE - CONTINUED" FORM(s) (identified/described in paragraph # 10). PSU Deblanc failed to review and/or appropriately respond to Plaintiffs DOC-112(A) information.
Plaintiff informed PSU Deblanc of Lt. Immerfall, C.O. Smith,

19

Capt. Tritt and Sgt. Beahm Personal Involvement with
placing Razor-Blades in Plaintiffs OBS CELL for Plaintiff to inflict
self-harm injury. Plaintiff requested protection from staff,
Plaintiff informed PSU Deblanc of the Plaintiffs continued/current
(living) condition(s) (identified/described in paragraph(s) # 50, 53).
PSU Deblanc was aware of, knew of, and responsible for Plaintiffs
continued/current situation (identified/described in paragraph # 48).
PSU Deblanc was aware of and knew Plaintiffs continued/current situation
and (living) condition(s) demonstrate unquestioned and serious deprivation(s)
of Plaintiffs basic human need(s) for warmth, sleep, sanitation,
reasonable safety, and medical care.
PSU Deblanc had authority over and responsibility to (remedy)
Plaintiffs situation and (living) condition(s) per W.AC DOC 311.
Plaintiff requested PSU Deblanc remedy/correct Plaintiffs continued/
current (living) condition(s) (identified/described in paragraph(s) #50,53).
PSU Deblanc failed to remedy/correct Plaintiffs continued/current
(living) condition(s) (identified/described in paragraph(s) #50,53).
Plaintiff requested and was denied a (security) Blanket by PSU Deblanc.
Plaintiff again requested and was denied Crisis-Counseling by PSU Deblanc.
PSU Deblanc showed/acted with Deliberate Indifference to Plaintiffs
continued/current situation and (living) condition(s) (identified/described
in paragraph(s) #50,53,48,55) by failing to provide Plaintiff with
the minimal civilized measure of lifes necessities.
PSU Deblanc (in)action(s) exacebated Plaintiffs severe emotional distress,
and caused Plaintiff unnecessary physical pain/injury and emotional pain/injury.

20

PSU Deblanc was subjectively aware of the significant likelihood that Plaintiff may imminently harm himself, including but not limited to Plaintiff further/additionally ripping/detaching his EAR (Right) from his head, yet she failed to take reasonable steps to prevent the plaintiff from performing the act.

56.) PSU Deblanc was aware of and Knew Plaintiff suffers from self-destructive tendencies and failed to properly intervene. PSU Deblanc was aware and Knew Plaintiffs OBS CELL confinement alone by itself was an inadequate means of reasonable safety to prevent Plaintiff inflicting additional self-harm, including but not limited to his EAR (Right).

57.) PSU Deblanc failed to provide Plaintiff reasonable safety through alternative means of restraint, allowing Plaintiff to inflict further/ additional self-harm injuries including but not limited to his EAR (Right).

58.) PSU Deblanc was required to report Plaintiffs situation and (living) condition(s) (identified/described in paragraph(s): 50, 53, 55), complaint(s) and request(s) to WCI PSU staff member Dr. Torria M. Van Buren ("PSU Van Buren").

59.) PSU Van Buren had authority over and responsibility to Plaintiffs situation and (living) condition(s) per W.A.C. DOC 311.

21

60.) PSU Van Buren was aware, Knew of, and failed to provide reasonable saftey and remedy/correct Plaintiffs situation/ (living) condition(s) (identified/described in paragraph(s) #55,56,57,58)

61.) At approximately 9:15 Am on September 10, 2018, C.O. Smith appeared cell-front to Plaintiffs OBS CELL to intimidate Plaintiff after Plaintiff identified to PSU Deblanc C.O. Smith Personal Involvement with placing Razor-Blades in Plaintiffs OBS CELL for Plaintiff to inflict self-harm injury.

62.) The circumstances of (including but not limited to) staff (mis)conduct against Plaintiff, Plaintiffs situation and (living) condition(s), combined with C.O. smith intimidation of Plaintiff and Plaintiffs severe emotional distress, caused Plaintiff to inflict additional serious/significant self-harm injury by violently ripping/pulling/tearing EAR (Right) from head, causing Plaintiff Physical pain/injury and emotional pain/injury. This additional damage to Plaintiffs EAR(Right) caused significant detachment of EAR(Right) from Plaintiffs head

63.) At approximately 9:45 Am, On September 10, 2018, Plaintiff was escorted to RHU HSU for medical attention. staff refused to have Plaintiffs EAR(Right) reattached, instead allowed it to remain detached from Plaintiffs head, creating unreasonable risk of infection, unreasonable risk of harm to Plaintiffs Health and Safety, demonstrating inadequate Medical

22

64.) Corrections Officer Martinez ("C.O. Martinez") and Capt. Tritt were required and failed to complete/file appropriate documentation (Including But Not Limited To ("IBNLT")) a (IRTS020C) Incident Report for this incident of significant self-harm injury involving Plaintiff, which also is required and fails to appear on (IRTS022B) Incident Report Log by offender, concealing staff (mis)conduct.

65.) At approximately 10:30 Am on September 10, 2018, Plaintiff was placed/reconfined to the same OBS CELL (on information and belief is number A-202).
Plaintiffs (living) condition(s) continued as identified/described in paragraph(s) # 50, 53. Plaintiffs OBS CELL was required to be inspected by staff for contraband, safety, sanitation, and suitability prior to and for Plaintiffs confinement within. C.O. Martinez and Capt. Tritt were assigned to/working/responsible for Plaintiffs OBS CELL conditions prior to and during Plaintiff confinement within, including Plaintiffs Health and Personal Safety, and the Plaintiffs resulting injuries due to the conditions of confinement within. C.O. Martinez and Capt. Tritt were aware and knew of Plaintiffs SMN for OBSERVATION STATUS placement, and failed to inspect and/or properly prepare/maintain Plaintiffs OBS CELL for Plaintiffs confinement within.

23

66.) Shortly after PSU Deblanc contact with Plaintiff on September 10, 2018, PSU Deblanc was informed by security staff that Plaintiffs (EAR) wound had reopened about five centimeters. PSU Deblanc (again) was subjectively aware of the significant likelihood that Plaintiff may (again) imminently harm himself IBNLT Plaintiff further/additionally detaching/ripping/pulling his EAR (Right), yet again she failed to take reasonable steps to prevent the Plaintiff from performing the act. PSU Deblanc was aware and knew Plaintiff suffers from self-destructive tendencies and failed to properly intervene. PSU Deblanc was aware and knew Plaintiffs OBS CELL confinement alone by itself was an inadequate means of reasonable safety to prevent Plaintiff inflicting additional self-harm injuries, IBNLT his EAR (Right).
PSU Deblanc failed to provide Plaintiff reasonable safety through alternative means of restraint, allowing Plaintiff to inflict further/additional self-harm injuries IBNLT his EAR (Right).

67.) The circumstances of IBNLT staff (mis) conduct against Plaintiff, Plaintiffs situation and (living) condition(s), combined with Plaintiffs severe emotional distress, caused Plaintiff to inflict additional serious self-harm injury by violently ripping/pulling/tearing his EAR (Right) from head, causing Plaintiff physical pain/injury and emotional pain/injury. Additional damage to Plaintiffs EAR (Right) resulted leaving EAR (Right) further detached from Plaintiffs head.

24

68.) At approximately 4:45 Pm on September 10, 2018, Plaintiff was escorted to RHU HSU for medical attention. Staff (again) refused to have Plaintiffs EAR (Right) reattached. Instead, staff (again) allowed Plaintiffs EAR (Right) to remain detached from his head, creating an unnecessary risk of infection and harm to Plaintiffs Health and Safety, demonstrating inadequate medical care.

Corrections Officer Vollmer ("C.O. Vollmer") and Captain Theander ("Capt. Theander") were required and failed to complete/file appropriate documentation IBNLT a (IRTS020C) Incident Report for this Significant Incident of self-harm injury involving Plaintiff, which is also required and fails to appear on (IRTS022B) Incident Report Log by Offender, concealing staff (mis)conduct.

69.) At approximately 5:00 Pm on September 10, 2018, Plaintiff was placed/reconfined to the same OBS CELL (on information and belief is number A-202). Plaintiffs (living) Condition(s) continued as identified/described in paragraph(s) #50,53. Plaintiffs OBS CELL was required to be inspected by staff for contraband, safety, sanitation, and suitability prior to and for Plaintiffs confinement within. C.O. Vollmer and Capt. Theander were assigned to/working/responsible for Plaintiffs OBS CELL conditions prior to and during Plaintiffs confinement within, including Plaintiffs Health

25

and Personal Safety, and the Plaintiffs resulting injuries due to the conditions of confinement within. C.O. Vollmer and Capt. Theander were aware and knew of Plaintiffs SMN for OBSERVATION STATUS placement, and failed to inspect and/or properly prepare/maintain Plaintiffs OBS CELL for Plaintiffs confinement within.

70.) The "on-call" PSU clinician was informed that Plaintiff inflicted additional self-harm injury to his EAR (Right). The "on-call" PSU clinician was subjectively aware of the significant likelihood that Plaintiff may (again) imminently harm himself IBNLT Plaintiff further/additionally detaching/ripping/pulling his EAR(Right), yet failed to take reasonable steps to prevent the Plaintiff from performing the act. The "on-call" PSU clinician was aware and knew Plaintiff suffers from self-destructive tendencies and failed to properly intervene. "on-call" PSU clinician was aware and knew Plaintiffs OBS CELL confinement alone by itself was an inadequate means of reasonable safety to prevent Plaintiff inflicting additional self-harm, IBNLT his EAR(Right).

71.) "on-call" PSU clinician failed to provide Plaintiff reasonable safety through alternative means of restraint, allowing Plaintiff to inflict further/additional self-harm injuries IBNLT his EAR (Right).

26

72.) At approximately 6:00 PM on September 10, 2018, the circumstances of IBNLT Staff (mis)conduct against Plaintiff, Plaintiffs situation and (living) condition(s) combined with Plaintiffs severe emotional distress, caused Plaintiff to remove the dressing on his wound/EAR (Right) injury and make statements (to staff) that he will rip his EAR off. Security staff Capt. Theander was required and failed to contact "on-call" PSU clinician to PROMPTLY report this (threat to continue self-harm) incident.

Plaintiff was escorted to RHU HSU for medical attention. Again, staff refused to have Plaintiffs EAR (Right) reattached. Instead, again allowed it to remain detached from Plaintiffs head, creating an unnecessary risk of infection, an unreasonable risk of harm to Plaintiffs Health and Safety, demonstrating inadequate medical care.

C.O. Vollmer and Capt. Theander were (again) required and failed to complete/file appropriate documentation IBNLT a (IRTS020C) Incident Report for this significant incident (of Threats to continue self-harm and (form of) self-harm by removing EAR/wound dressing) involving Plaintiff, which is also required and fails to appear on (IRTS022B) Incident Report Log by offender, concealing staff (mis)conduct.

27

73.) At approximately 6:15 Pm on September 10, 2018, Plaintiff was placed/reconfined to the same OBS CELL (on information and belief is number A-202). Plaintiffs (living) condition(s) continued as identified/described in paragraph(s) #50, 53. Plaintiffs OBS CELL was required to be inspected by staff for contraband, safety, sanitation, and suitability prior to and for Plaintiffs confinement within. C.O. Vollmer and Capt. Theander were assigned to/working/responsible for Plaintiffs OBS CELL conditions prior to and during Plaintiffs confinement within, including Plaintiffs Health and Personal Safety, and the Plaintiffs resulting injuries due to the condition(s) of confinement within. C.O. Vollmer and Capt. Theander were aware and knew of Plaintiffs SMN for OBSERVATION STATUS placement, and failed to inspect and/or properly prepare/maintain Plaintiffs OBS CELL for Plaintiffs confinement within.

74.) C.O. Vollmer and/or Capt. Theander were required and failed to contact PSU Promptly, and were subjectively aware of the significant likelihood that Plaintiff may imminently harm himself (again), IBNLT Plaintiff further/additionally detaching/ripping/pulling his EAR (Right), yet (they) failed to take reasonable steps to prevent the Plaintiff from performing the act. C.O. Vollmer and Capt. Theander were aware and knew Plaintiff suffers from

28

self-destructive tendencies and failed to properly intervene. C.O. Vollmer and Capt. Theander were aware and knew Plaintiffs OBS CELL confinement alone by itself was an inadequate means of reasonable safety to prevent Plaintiff inflicting additional self-harm injuries, IBNLT his EAR(Right).

C.O. Vollmer and/or Capt. Theander failed to provide Plaintiff reasonable safety through alternative means of restraint, allowing Plaintiff to inflict further/additional self-harm injuries IBNLT his EAR(Right).

75.) The circumstances of IBNLT staff (mis)conduct against Plaintiff, Plaintiffs situation and (living) condition(s), combined with Plaintiffs severe emotional distress, caused Plaintiff to inflict additional serious self-harm injury by violently ripping/pulling/tearing his EAR(Right) from head, causing Plaintiff physical pain/injury and emotional pain/injury. Additional damage to Plaintiffs EAR(Right) resulted leaving EAR(Right) further detached from Plaintiffs head.

76.) On September 11, 2018, at approximately 7:00 Am, Plaintiff informed/showed Sgt. Beahm Plaintiff inflicted additional self-harm injury to his EAR(Right). Plaintiff did not recieve Medical attention until approximately 10:15 Am, Plaintiff was left unattended in his unsanitary OBS CELL with an open wound/

29

/self-harm injury to his EAR(Right) for approximately 3 hours and 15-minutes after Sgt. Beahm became aware and knew that Plaintiff inflicted a new self-harm injury to his EAR(Right) and Plaintiffs new self-harm EAR(Right) injury required medical attention. Sgt. Beahm was subjectively aware of the significant likelihood that Plaintiff may imminently harm himself (again), IBNLT Plaintiff further/additionally detaching/ripping/pulling his EAR(Right), yet he failed to take reasonable steps to prevent the Plaintiff from performing the act. Sgt. Beahm was aware and knew Plaintiff suffers from self-destructive tendencies and failed to properly intervene. Sgt. Beahm was aware and knew Plaintiffs OBS CELL confinement alone by itself was an inadequate means of reasonable safety to prevent Plaintiff inflicting additional self-harm injuries, IBNLT his EAR(Right). Sgt. Beahm failed to provide Plaintiff reasonable safety through alternative means of restraint, allowing Plaintiff to inflict further/additional self-harm injuries, IBNLT his EAR (Right).

Sgt. Beahm was required and failed to complete/file appropriate documentation IBNLT a (IRTS020C) Incident Report for this Significant Incident of self-harm injury involving Plaintiff, which is also required and fails to appear on (IRTS022B) Incident Report Log by Offender, concealing staff (mis)conduct.

77.) At approximately 9:00 Am on September 11, 2018,
PSU Staff member Dr. Devona M. Gruber ("PSU Gruber")
was informed of · Plaintiff has continued to inflict serious
self-harm injuries to his EAR(Right). PSU Gruber then
appeared cell-front to Plaintiffs OBS CELL and was required
to perform a " mental status Evaluation" required by W.A.C DOC 311.
Per DOC 311.05, "Examination of Mental Health Placement",
(1) "... The examination shall include a direct personal
evaluation and a review of recent relevant information".
Recent relevant information required for PSU Gruber to review
IBNLT DOC-112(A) "OBSERVATION OF INMATE - CONTINUED" FORM(s)
(identified/described in paragraph #10).
PSU Gruber failed to review and/or appropriately respond to
Plaintiffs DOC-112(A) information identifying/verifying
IBNLT Plaintiff's sleep deprivation.
Plaintiff informed PSU Gruber of the Plaintiffs continued/current
situation and (living) condition(s) identified/described in
paragraph(s) #50, 53, 48.
PSU Gruber was aware of and Knew Plaintiff's continued/current
situation and (living) Condition(s) demonstrate unquestioned and
serious deprivation(s) of Plaintiffs basic human need(s) for warmth,
sleep, Sanitation, reasonable safety, and medical care.
PSU Gruber had authority over and responsibility to (remedy)
Plaintiffs situation and (living) condition(s) per W.AC DOC 311.
Plaintiff requested PSU Gruber remedy/correct Plaintiffs continued/

31

/current (living) condition(s) (identified/described in paragraph(s) # 50,53. PSU Gruber failed to remedy/correct Plaintiffs continued/ current (living) condition(s) identified/described in paragraph(s) #50,53. Plaintiff requested and was denied a (security) Blanket by PSU Gruber. Plaintiff requested and was denied crisis-counseling by PSU Gruber. PSU Gruber showed/acted with Deliberate Indifference to Plaintiffs continued/current situation and (living) condition(s) (identified/ described in paragraph(s) #50,53,48,77) by failing to provide plaintiff with the minimal civilized measure of lifes necessities. PSU Gruber (in)action(s) exacerbated Plaintiffs severe emotional distress, and caused Plaintiff unnecessary physical pain/injury and emotional pain/injury.

Plaintiff requested PSU Gruber to get him medical care for his EAR (Right), but she did not acquire medical care for Plaintiff. PSU Deblanc was subjectively aware of the significant likelihood that Plaintiff may imminently harm himself (again), IBNLT Plaintiff further/additionally ripping/detaching his EAR (Right) from his head, yet she failed to take reasonable steps to prevent the Plaintiff from performing the act.


78.) PSU Gruber was aware of and knew Plaintiff suffers from self-destructive tendencies and failed to properly intervene. PSU Gruber was aware and knew Plaintiff's OBS CELL confinement alone by itself was an inadequate means of reasonable safety to Prevent Plaintiff inflicting additional self-harm, IBNLT his EAR (Right).

32

79.) PSU Gruber failed to provide Plaintiff reasonable safety through alternative means of restraint, allowing Plaintiff to inflict further/additional self-harm injuries IBNLT his EAR (Right).

80.) PSU Gruber was required to report Plaintiffs situation and (living) condition(s) (identified/described in paragraph(s) #50,53,77), complaint(s) and request(s) to WCI PSU Van Buren.

81.) PSU Van Buren had authority over and responsibility to Plaintiffs situation and (living) condition(s) per W.A.C. DOC 311.

82.) PSU Van Buren was aware, knew of, and failed to provide reasonable safety and remedy/correct Plaintiffs situation/(living) condition(s) (identified/described in paragraph(s) # 77, 78, 79, 80).

83.) The circumstances of, (IBNLT) staff (mis)conduct against Plaintiff, and Plaintiffs (living) condition(s) combined with Plaintiffs severe emotional distress, caused Plaintiff to inflict additional serious self-harm injury by violently ripping/pulling/tearing EAR (Right) from head, causing Plaintiff physical pain/injury and emotional pain/injury. Additional damage to Plaintiffs EAR(Right) resulted leaving EAR (Right) significantly further detached from Plaintiffs head.

33

84.) At approximately 10:15 Am on September 11, 2018, Plaintiff received medical attention from RHU nurse for his additional serious self-harm injuries. C.O. Martinez, Sgt. Beahm, and Capt. Tritt were required and failed to complete/file appropriate documentation IBNLT a (IRTS020C) Incident Report for this significant Incident of self-harm injury involving Plaintiff, which is also required and fails to appear on (IRTS022B) Incident Report Log by Offender, concealing staff (mis)conduct.

85.) At approximately 11:00 Am on September 11, 2018, PSU Gruber was contacted by the RHU Sergeant and informed that Plaintiff inflicted additional serious self-harm injury as a significant portion of his EAR(Right) was detached from his head, He was sent to an outside Hospital for Medical care.

86.) Plaintiff was not transported to WMH for his required EMS until approximately 2:00 Pm on September 11, 2018. Inside WMH Emergency Room Dr. Khan refused to treat Plaintiffs EAR(Right) injury for what he claims was a risk of infection.

87.) Plaintiff was transported back to WCI RHU. Plaintiffs EAR(Right) remained detached/separated from his head, still requiring EMS.

34

88.) Plaintiff was then transported to University of Wisconsin-Madison ("UWM") Medical complex, UW Health (Emergency Department) # 608-262-2398, (on information and belief Located at: 600 HIGHLAND AVE, MADISON, WI 53792).

89.) Plaintiff was transported to UWM medical complex for Plaintiffs required EMS.
Plaintiff underwent surgery to reattach his EAR (Right) and was provided Narcotic Pain-Management for his extreme Pain.

90.) Plaintiff was transported back to WCI RHU after surgery on the evening of September 11, 2018.

91.) On the evening of September 11, 2018, WDOC WCI staff member(s) Placed/reconfined Plaintiff to the same OBS CELL where Plaintiff inflicted serious/significant self-harm injuries,
(on information and belief the OBS CELL number is A-202).
Plaintiffs (living) condition(s) continued as identified/described in paragraph(s) # 50,53. Plaintiffs OBS CELL was required to be inspected by staff for contraband, safety, sanitation, and suitability prior to and for Plaintiffs confinement within.
Security staff, "on-call" PSU clinician, PSU Van Buren, Social Worker STARK ("S.W. STARK"), Social Services Director

Bonis ("SSD. Bonis"), Corrections Program Supervisor Yana Pusich ("CPS Pusich"), Health Services Unit Manager Chrystal Marchant-Meli ("HSUM Marchant-Meli"), Nurse Coordinator IV Donna Larson R.N ("RN NC Larson"), Medical Doctor Jefferey Manlove ("Manlove M.D."), Advanced Practicioner Nurse Practioner Nathan Tapio ("AP NP Tapio"), Security Director Meli ("S.D. Meli"), Deputy Warden Wierenga ("D.W. Wierenga"), Warden Brian Foster ("Warden Foster") were aware and knew of Plaintiffs SMN for OBSERVATION STATUS placement, were assigned to/working/responsible for Plaintiffs situation and (living) condition(s) during Plaintiffs OBS CELL confinement, including Plaintiffs Health and Safety, and the Plaintiffs resulting injuries due to the conditions of confinement within. They were updated/notified/aware/knew of Plaintiffs situation and (living) condition(s) IBNLT inflicting on-going self-harm injuries to his EAR(Right), had authority over and responsibility to Plaintiffs situation and (living) condition(s) per W.A.C. DOC 311, were subjectively aware of the significant likelihood that Plaintiff may imminently harm himself again IBNLT inflicting on-going serious self-harm injuries to his EAR(Right), yet failed to take reasonable steps to prevent Plaintiff from performing the act, they were aware and knew Plaintiff suffers from self-destructive tendencies and failed to propery intervene.

36

They were aware and knew that Plaintiffs OBS CELL confinement alone by itself was an inadequate means of reasonable safety to prevent Plaintiff inflicting additional self-harm, IBNLT his EAR (Right).
They failed to provide reasonable safety through alternative means of restraint, allowing Plaintiff to inflict on-going self-harm injuries IBNLT his EAR (Right).
They failed to inspect and/or properly prepare/maintain Plaintiffs OBS CELL for Plaintiffs confinement within.

92.) On September 12, 2018, at approximately 8:55 Am, PSU staff member Dr. Gayle E. Griffith ("PSU Griffith") appeared cell-front to Plaintiffs OBS CELL and was required to perform a "Mental Status Evaluation" required by W.AC DOC 311. Per DOC 311.05, "Examination of Mental Health Placement", (1) "... The examination shall include a direct personal evaluation and a review of recent relevant information".
Recent relevant information required for PSU Griffith to review IBNLT, DOC-112(A) "OBSERVATION OF INMATE-CONTINUED" FORM(s) identified/described in paragraph #10. PSU Griffith failed to review Plaintiffs DOC-112(A) information as record(s) DOC-112(A) for 09-12-2018 "does not exist", Demonstrating Deliberate Indifference to Plaintiffs Health and Personal Safety. Plaintiff informed PSU Griffith of staff (mis)conduct against Plaintiff, and requested Protection

37

from staff. Plaintiff informed PSU Griffith of the Plaintiffs
continued/current (living) condition(s) identified/described in
paragraph(s) #50,53. PSU Griffith was aware of and knew
Plaintiffs continued/current situation and (living) condition(s)
demonstrate unquestioned and serious deprivation(s) of
Plaintiffs basic human need(s) for, warmth, sleep, sanitation,
reasonable safety, and medical care.
PSU Griffith authority over and responsibility to
Plaintiffs situation and (living) condition (s) per W.A.C DOC 311.
Plaintiff requested PSU Griffith remedy/correct Plaintiffs
continued/current situation and (living) condition(s)(identified/
described in paragraph(s) #50,53,92.), these requests were
denied by PSU Griffith.
Plaintiff requested but was denied a (security) Blanket from
PSU Griffith. PSU Griffith was aware and knew of Plaintiffs
continued/current severe emotional distress.
Plaintiff requested but was denied crisis-counseling from
PSU Griffith. PSU Griffith failed to remedy/correct Plaintiffs
situation and (living) condition(s) identified/described in
paragraph(s) #50,53,92.
PSU Griffith showed/acted with Deliberate Indifference to
Plaintiffs continued/current situation and (living) condition(s)
, and Plaintiffs SMN (identified/described in paragraph(s) #
50,53,48,92) by failing to provide plaintiff with the minimal
civilized measure of lifes necessities.

PSU Griffith was aware and knew Plaintiff suffers from self-destructive tendencies and failed to properly intervene. PSU Griffith was aware and knew Plaintiffs OBS CELL confinement alone by itself was an inadequate means of reasonable safety to prevent Plaintiff inflicting additional on-going serious self-harm injuries IBNLT his EAR (Right).

93.) PSU Griffith failed to provide Plaintiff reasonable safety through alternative means of restraint, allowing Plaintiff to inflict additional on-going serious self-harm injuries IBNLT his EAR (Right).
PSU Griffith (in) action(s) exacerbated Plaintiffs severe emotional distress, and caused Plaintiff unnecessary physical pain/injury and emotional pain/injury.

94.) PSU Griffith was required to report Plaintiffs continued/current situation and (living) condition(s) identified/described in paragraph(s) # 50, 53, 48, 92, IBNLT Plaintiffs on-going/continuous serious self-harm injuries, complaint(s), and request(s) to PSU Van Buren.

39

95.) PSU Van Buren had authority and responsibility to Plaintiffs situation and (living) condition(s) per W.A.C. DOC 311. PSU Van Buren was aware, knew of, and failed provide reasonable safety and remedy / correct Plaintiffs situation and (living) condition(s) Identified / described in paragraph(s) IBNLT # 92, 93, 94, 95.

96.) Experiencing extreme physical and emotional distress Plaintiff sought help from staff.

97.) On September 12, 2018, at approximately between 12:00 PM - 2:00 PM, Sgt. Beahm was wearing his Body Worn Camera ("BWC"), and appeared cell-front to Plaintiffs OBS CELL while Plaintiff was yelling for help through his OBS CELL door.
Sgt. Beahm Told Plaintiff he is sick and tired of him, and asked what Plaintiff wants.

98.) Plaintiff informed Sgt. Beahm that Plaintiff needs help, and is going to rip his EAR off again if he does not get help.

99.) Sgt. Beahm told Plaintiff to go ahead and do it, rip your EAR off, I don't care. Plaintiff has requested these (BWC) footages / Video Recordings / Audio Recordings be PRESERVED.

40

100.) Plaintiff obeyed Sgt. Beahm directive to proceed with serious self-harm injury by violently pulling/ripping his EAR(Right), causing Plaintiff physical pain/injury and emotional pain/injury, causing Plaintiffs EAR(Right) to be significantly detached from Plaintiffs head.

101.) Plaintiff was escorted by Sgt. Beahm to RHU HSU. RHU Sgt. Beahm was required and failed to complete/file appropriate documentation for being a staff member Personally Involved in a incident while wearing a BWC IBNLT DOC-112(A), DOC-2466, and (1RTS020C) Incident Report for this significant incident of serious self-harm injury involving Plaintiff, which is also required and fails to appear on (1RTS022B) Incident Report Log by Offender, concealing RHU Sgt. Beahm Personal Involvement and (mis)conduct.

102.) Plaintiff was placed/confined within a WCI RHU strip-cage to await transport for required outside EMS.

41

103.) While Plaintiff was confined within the WCI RHU strip-cage awaiting transport, Plaintiff observed RHU Sgt. Beahm in a "huddle" with and speaking to other RHU staff members (including RHU capt. Tritt). They continuously looked back and forth from Plaintiff to eachother. Plaintiff was freightened by their looking at Plaintiff. At the end of the "huddle" RHU Sgt. Beahm shouted, "I fucking love you guys!"

104.) RHU Sgt. Beahm approached Plaintiffs WCI RHU strip-cage while looking at Plaintiff and smiled, another RHU staff member said to RHU Sgt. Beahm, "Don't worry sarge, it'll be like it never happened cause you were never here."

105.) On the evening of September 12, 2018; Plaintiff was transported to UWM Medical complex (identified/described in paragraph # 88). Plaintiff underwent surgery to reattach his EAR (right) and was provided Narcotic Pain-Management for his extreme pain.

42

106.) Plaintiffs OBSERVATION STATUS confinement DOC-112(A) Records (identified/described in paragraph #10) do not exist for the approximate time period of 09-11-2018 2:00 Pm through 09-13-2018 9:30 Am. Concealing Staff identities of those responsible for (mis)conduct against Plaintiff, requested these Records from WCI staff member Records Supervisor Corene Giebel.

107.) Records supervisor Corene Giebel notified Plaintiff (via official document(s)) that Plaintiffs OBSERVATION STATUS confinement DOC-112(A) Record(s) for 09-12-2018 Do Not Exist.

108.) WCI staff member(s) John/Jane Doe, Sgt. Beahm, Capt. Tritt, and PSU Griffith, were aware and Knew of Plaintiffs SMN for OBSERVATION STATUS placement, were assigned to/working/responsible for monitoring and Recording Plaintiff on IBNLT DOC-112(A) Record(s) during Plaintiffs OBSERVATION STATUS confinement in his WCI RHU OBS CELL on IBNLT 09-12-2018, were Deliberately Indifferent to Plaintiff SMN by failing to Monitor and Record Plaintiff in accordance with W.A.C DOC 311, and PSU staff Directives to Observe Plaintiff at "close-watch" fifteen-minute intervals inorder to monitor Plaintiffs safety.

43

109.) Staff member(s) John/Jane Doe, were aware and knew of Plaintiffs SMN for OBSERVATION STATUS placement, were assigned to/working/responsible for Monitoring and Recording Plaintiff on IBNLT DOC-112(A) Record(s) during Plaintiffs OBSERVATION STATUS confinement for the approximate time-period of 09-11-2018 2:00 Pm through 09-13-2018 9:30 Am while in his WCI RHU OBS CELL, were Deliberately Indifferent to Plaintiff SMN by failing to Monitor and Record Plaintiff in accordance with W.A.C. DOC 311, and PSU staff Directives to Observe Plaintiff at "close-watch" fifteen-minute intervals inorder to Monitor Plaintiffs safety.

110.) WCI staff member(s), Mccawley, Mahoney, Sanchez on 09-08-2018. Whyte, O'Neil, on 09-09-2018. Martinez, Vollmer, Fishe, Tritt on 09-10-2018, were (all) aware and knew of Plaintiffs SMN for OBSERVATION STATUS placement, were assigned to/working/responsible for Monitoring and Recording Plaintiff on IBNLT DOC-112(A) Record(s) during Plaintiffs OBSERVATION STATUS confinement in his WCI RHU OBS CELL, were Deliberately Indifferent to Plaintiff SMN by failing to Monitor and Record Plaintiff in accordance with W.A.C. DOC 311, and PSU staff Directives to Observe Plaintiff at "close-watch" fifteen-minute intervals inorder to Monitor Plaintiffs safety.

44

111.) These issues of staff (mis)conduct against Plaintiff within the Statement of Claim created Mutually Enforcing Effect(s) which (also) produced the deprivation(s) of Plaintiffs identified Human need(s) of warmth, sleep, sanitation, Reasonable safety, and Medical care, causing Plaintiff physical pain/injury and emotional pain/injury.

## Claims for Relief
### A. Failure to Protect

112.) The failure of Defendants ALL to act on his/her Knowledge of a substantial risk of serious harm to Plaintiff violates his Eighth Amendment right to be free from Deliberate Indifference to his safety.

113.) As a result of the Defendants failure, Plaintiff received serious Physical injuries and Emotional injuries.

### B. Deliberate Indifference to Medical Needs

114.) The failure of Defendants to take steps to Ensure that Plaintiff received the needed treatment, despite their Knowledge of Plaintiffs serious Medical Needs,

45

constituted Deliberate Indifference to Plaintiff's serious Medical Needs.

115.) As a result of Defendants failure to provide needed Medical treatment, Plaintiff suffered further injury and Physical and Emotional pain and injury.

116.) Plaintiff Request(s) the Court recognize Plaintiff is a pro-se with no legal training/Education, and that the Court grant Plaintiff a Liberal Construement of the COMPLAINT. Thank you.

117) Plaintiff alleges permenant physical and emotional Injuries.

46

END

C.    JURISDICTION

☑    I am suing for a violation of federal law under 28 U.S.C. § 1331.

OR

☐    I am suing under state law. The state citizenship of the plaintiff(s) is (are) different from the state citizenship of every defendant, and the amount of money at stake in this case (not counting interest and costs) is $_____.

D.    RELIEF WANTED

Describe what you want the Court to do if you win your lawsuit. Examples may include an award of money or an order telling defendants to do something or to stop doing something.

A • Declare that Defendants violated Plaintiffs Eighth Amendment rights when they failed to Protect him from a substantial risk of serious harm to his safety.

B • Declare that Defendants violated Plaintiffs Eighth Amendment right to Medical care.

C • Terminate Defendants Employability with WDOC permanently.

D • Stricter PENALTY for violating BWC rules and regulations/Policies.

E • Surprise investigations for the Treatment of WDOC WCI RHU Inmates Inmates, and with the investigations done by Third-Party oversight.

F • WDOC WCI RHU CELLS BE MANDATORY PRESURE WASHED inside cell, wall, ceiling, doors, Floor, and this is to be COMPLETED BEFORE AND AFTER EVERY INMATE IS HOUSED IN THESE CELLS.

G • MANDATORY BWC of cell inspection prior to Inmate placement within.

H • Award compensatory damages for Plaintiffs physical and emotional injuries, and punitive damages against each Defendant; and

I • Grant Plaintiff such other relief as it may appear Plaintiff is entitled to.

J • Compensatory Damages IBNLT Physical Pain and Injury, Psychological Damage IBNLT Personal Humiliation and Mental Anguish, Loss of Liberty, Emotional Suffering.

K • Plaintiff Request compensatory damages be awarded Jointly and severally against each defendant.

L • Plaintiff Request punitive damages be awarded separaty against each defendant.

E.    JURY DEMAND

I want a jury to hear my case.

☑ – YES          ☐ – NO

I declare under penalty of perjury that the foregoing is true and correct.

Complaint signed this ___19 th___ day of _August_____ 20 _21_ .

Respectfully Submitted,

_Matthew J. Harris_____
Signature of Plaintiff

_564394_____
Plaintiff's Prisoner ID Number

_P.O. BOX 900_____

_STURTEVANT, WI 53177_____
(Mailing Address of Plaintiff)

(If more than one plaintiff, use another piece of paper.)

**REQUEST TO PROCEED IN DISTRICT COURT WITHOUT PREPAYING THE FULL FILING FEE**

☑    I **DO** request that I be allowed to file this complaint without paying the filing fee.
I have completed a Request to Proceed in District Court without Prepaying the
Full Filing Fee form and have attached it to the complaint.

☐    I **DO NOT** request that I be allowed to file this complaint without prepaying the
filing fee under 28 U.S.C. § 1915, and I have included the full filing fee with this
complaint.

Complaint – (49)