UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MATTHEW J. HARRIS,

    Plaintiff,

v.                                                  Case No. 21-C-1011

KRISTINA DEBLANC, et al.,

    Defendants.

## DECISION AND ORDER

Plaintiff Matthew J. Harris, who is representing himself, is proceeding on the following Eighth Amendment claims: (1) that defendants Christopher Pass, Keith Immerfall, Greg Smith, Kyle Tritt, and Joseph Beahm were deliberately indifferent on September 7, 2018 by placing razor blades in Plaintiff's observation cell with instructions to "carve [himself] up like a [] turkey" along with other similar taunts and intimidation ("Claim #1"); (2) that defendants Tritt, Alexia Martinez, Kristina Deblanc, Angus Vollmer, Craig Theander, Devona Gruber, and Gayle Griffith imposed unconstitutional conditions of confinement between September 7, 2018 and September 12, 2018 by placing Plaintiff in a cold observation cell that was covered in feces and graffiti promoting death and self-harm ("Claim #2"); and (3) that defendants Deblanc, Gruber, and Griffith were deliberately indifferent between September 7, 2018 and September 12, 2018 by refusing to order restraints while Plaintiff was in his observation cell ("Claim #3"). Dkt. No. 11 at 8-9.

On March 31, 2022, Defendants filed a motion for summary judgment based on failure to exhaust administrative remedies. Dkt. No. 22. Because the undisputed evidence shows that Plaintiff filed an inmate complaint in connection with Claim #1, but did not attempt to file any

inmate complaints in connection with Claim #2 and Claim #3, the Court will grant the motion in part, deny the motion in part, and dismiss Claim #2 and Claim #3 from this case.

## UNDISPUTED FACTS

The incidents giving rise to this lawsuit occurred between September 7, 2018 and September 12, 2018 while Plaintiff was on observation status at the Waupun Correctional Institution. *See* Dkt. No. 24, ¶1; *see also* Dkt. No. 11. Plaintiff filed three inmate complaints that can be reasonably construed as relating to the facts of this case. Dkt. No. 24, ¶2; *see also* Dkt. No. 25-1.

1. **Inmate Complaint WCI-2018-20573**

On September 21, 2018, Plaintiff drafted inmate complaint WCI-2018-20573. Dkt. No. 25-2. Plaintiff alleged that, on September 7, 2018, staff "failed to protect [him] from harm during a time of psychological distress." *Id*. at 11. Plaintiff stated, " I was placed in WCI Restrictive Housing Unit Observation Crisis Cell A202 where I found razor blades which were used to mutilate my body." *Id*. Plaintiff requested that "observation crisis cells be thoroughly cleaned and all contraband be removed…both before and after an inmate is housed within said cell." *Id*. Plaintiff noted that he was on observation status until September 20, 2018, so he did not have access to writing materials. *Id*. He therefore requested that his inmate complaint be accepted late for good cause. *Id*.

On September 28, 2018, the Institution Complaint Examiner (ICE) accepted the inmate complaint and recommended dismissing it because the investigation showed that staff did not place him in a cell with razor blades. *Id*. at 2. The ICE found that Plaintiff had created his own weapon out of a piece of metal that he dug out of the window. *Id*. More specifically, Plaintiff had removed a piece of plaster from the window, and once the plaster was removed, some metal was exposed,

2

which Plaintiff broke off in order to self-harm. *Id*. The investigation included a picture of the object used to self-harm. *Id*. at 12-13. The Reviewing Authority (RA) accepted the ICE's recommendation and dismissed the inmate complaint on October 1, 2018. *Id*. at 4. Plaintiff appealed the dismissal, claiming that "the record contained false information." *Id*. at 14. Plaintiff stated that the piece of metal he found in his observation cell was a razor blade and he found it in the track of the sliding security door. *Id*. The Corrections Complaint Examiner (CCE) recommended dismissing the appeal because Plaintiff did not have credible evidence showing that that record contained "false" information. *Id*. at 6. The Office of the Secretary (OOS) accepted the recommendation and dismissed the inmate complaint on October 15, 2018. *Id*. at 7.

2. **Inmate Complaint WCI-2019-5972**

About six months later, on March 27, 2019, Plaintiff drafted inmate complaint WCI-2018-5972. Dkt. No. 25-3. Plaintiff alleged that, on September 10, 2018, he engaged in an act of self-harm during a time of psychological distress. *Id*. at 10. Plaintiff stated, " a [] incident report has not been generated/filed concerning the above mentioned, which is a violation of policy and procedure." *Id*. Plaintiff requested that "the missing incident report be generated and filed with records department in accordance with policies and procedures." *Id*.

On April 25, 2019, the ICE recommended dismissing the inmate complaint because DAI 500.70.24 only required an incident report regarding inmates who were not on observation status. *Id*. at 2. Plaintiff was already on observation on September 10, 2018, so an incident report was not necessary. *Id*. The RA accepted the ICE's recommendation and dismissed the inmate complaint on May 2, 2019. *Id*. at 3. Plaintiff appealed the dismissal, maintaining that prison policy had been violated. *Id*. at 19. The CCE recommended dismissing the appeal because Plaintiff did

3

not have evidence to support overturning the ICE's decision. *Id*. at 5. The OOS accepted the recommendation and dismissed the inmate complaint on May 23, 2019. *Id*. at 6.

### 3. Inmate Complaint WCI-2019-6366

On April 2, 2019, Plaintiff drafted inmate complaint WCI-2019-6366. Dkt. No. 25-4. Plaintiff alleged that, on September 11, 2018, he engaged in an act of self-harm during a time of psychological distress. *Id*. at 8. Plaintiff stated, " a [] incident report has not been generated/filed concerning the above mentioned, which is a violation of policy and procedure." *Id*. Plaintiff requested that "the missing incident report be generated and filed with records department in accordance with policies and procedures." *Id*. Plaintiff stated that he had good cause for the tardy filing because prison rules only allowed for one inmate complaint per week, which required him to separate his inmate complaints as he had already surpassed his quota for that week. *Id*. at 9.

On April 4, 2019, the ICE rejected the inmate complaint because it was beyond the 14-day time limit to file. *Id*. at 2. The ICE noted that it was Plaintiff's responsibility to prioritize his submissions. *Id*. The ICE concluded that Plaintiff did not show good cause for the tardy filing. *Id*. On April 8, 2019, Plaintiff appealed the rejection, disputing the dates used to calculate the 14-day time period. *Id*. at 18-19. On April 19, 2019, the RA rejected the appeal as also untimely filed. *Id*. at 5.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could

4

return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co*., 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

"[N]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). "The primary justification for requiring prisoners to exhaust administrative remedies is to give the prison an opportunity to address the problem *before* burdensome litigation is filed." *Chambers v. Sood*, 956 F.3d 979, 983 (7th Cir. 2020) (citing *Woodford v. Ngo*, 548 U.S. 81, 93–95 (2006); *Schillinger v. Kiley*, 954 F.3d 990, 995–96 (7th Cir. 2020)). The exhaustion requirement "protects the prison's administrative authority" by giving it an opportunity to correct its own mistakes before suit is filed against it in federal court. *Schillinger*, 954 F.3d at 995–96.

Wisconsin has established the Inmate Complaint Review System (ICRS) to review inmate grievances. Wis. Admin. Code § DOC 310.05. An inmate must file a complaint with the ICE within 14 calendar days of the relevant occurrence. Wis. Admin. Code §§ DOC 310.03(5) and 310.07(2). "Each complaint may contain only one clearly identified issue." §DOC 310.07(5).

Further, "[a] complaint must contain sufficient information for the department to investigate and decide the complaint." §DOC 310.07(6). The inmate complaint "need not lay out the facts, articulate legal theories, or demand particular relief." *Strong v. David,* 297 F.3d 646, 649 (7th Cir. 2002). But the inmate complaint must "alert[] the prison to the nature of the wrong for which redress is sought." *Id.* at 650. The inmate complaint must provide enough facts to give defendants "notice of, and an opportunity to correct, a problem." *Price v. Friedrich*, 816 F. App'x 8, 10 (7th Cir. 2020) (quoting *Schillinger*, 954 F.3d at 995-96).

The ICRS requires that inmates "exhaust all administrative remedies the department has promulgated by rule" before filing a lawsuit. § DOC 310.05. This requires an inmate to file complaints and appeals "in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "At the discretion of the ICE, a late complaint may be accepted for good cause." § DOC 310.07(2). But an inmate must "request to file a late complaint in the written complaint and explicitly provide the reason for the late filing." *Id*. If an examiner has "looked to the substance of the grievance," exhaustion is satisfied notwithstanding procedural defects. *McDaniel v. Meisner*, 617 F. App'x 553, 558 (7th Cir. 2015).

Inmates need not exhaust administrative remedies that are unavailable, however. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Administrative remedies are "unavailable" where "(1) prison officials are 'consistently unwilling to provide any relief to aggrieved inmates;' (2) the administrative scheme is 'so opaque that it becomes, practically speaking, incapable of use;' or (3) prison administrators take affirmative action to thwart use of the grievance process." *Ramirez v. Young*, 906 F.3d 530, 538 (7th Cir. 2018) (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016)).

6

**I. Inmate Complaint WCI-2018-20573 gave Defendants adequate notice of Claim #1 because the ICE investigated the facts giving rise to the claim.**

Defendants contend that none of the inmate complaints Plaintiff filed gave them adequate notice and opportunity to investigate the allegations in Claim #1: that they placed razor blades in Plaintiff's observation cell on September 7, 2018 with instructions to carve himself up like a turkey, along with other similar taunts and intimidation. *See* Dkt. No. 23 at 8-9. They assert that Claim #1 primarily involves verbal harassment, taunts, and intimidation while his inmate complaint only alleges negligence, *i.e.*, failing to check his observation cell for contraband left behind by other inmates. *See* Dkt. No. 50 at 2-3. Plaintiff, on the other hand, argues that he did allege enough facts to give the institution notice of the claim and he states that the ICE investigated the relevant facts on the merits. *See* Dkt. No. 43 at 10-13.

The Court agrees that Inmate Complaint WCI-2018-20573 gave Defendants adequate notice of Claim #1 because the ICE investigated the facts giving rise to the claim. Plaintiff had alleged in his inmate complaint that he was in a state of psychological distress on September 7, 2018; that he found razor blades in his observation cell; and that Defendants were responsible for him harming himself that day. The ICE investigated what happened that day, looked at pictures of the item used to self-harm, and concluded that Defendants did not place razor blades in his cell—that Plaintiff created the sharp object out of a piece of metal in his cell. These are precisely the facts at the heart of Claim #1.

Further, Plaintiff was not required to "articulate legal theories" in his inmate complaint. *See Strong,* 297 F.3d at 649. The relevant facts were identified and investigated; Defendants had an opportunity to correct their own mistakes; and Defendants now have enough information to defend Claim #1 based on the ICE's investigation and report. Defendants' argument that Plaintiff fashioned his inmate complaint as "negligence" as opposed to failure to protect or verbal

harassment is therefore unpersuasive.  Accordingly, the Court is satisfied that Plaintiff exhausted administrative remedies with respect to Claim #1.  *See e.g. Hampton v. Baldwin*, No. 3:18-CV-550-NJR-RJD, 2018 WL 5830730, at *8 (S.D. Ill. Nov. 7, 2018) (rejecting Defendants' argument that Plaintiff had to specifically mention "harassment, beatings, [and] threats" to exhaust a claim involving mental health).

> II. **The Undisputed Evidence Shows that Plaintiff did not attempt to file any inmate complaints in connection with Claim #2 and Claim #3.**

Defendants contend that Plaintiff never filed an inmate complaint alleging that Tritt, Martinez, Deblanc, Vollmer, Theander, Gruber, and Griffith placed him in a cold observation cell that was covered in feces and graffiti promoting death and self-harm; or an inmate complaint alleging Deblanc, Gruber, and Griffith refused to order restraints while he was in his observation cell.  *See* Dkt. No. 23 at 9-10.  Plaintiff does not provide any credible evidence genuinely disputing this. *See* Dkt. No. 46, ¶¶3-4.  Instead, he attempts to assert that administrative remedies were "unavailable" to him because he was on observation status until September 20, 2018 and staff would not give him an inmate complaint or scrivening materials.  *Id*.; *see also* Dkt. No. 45, ¶¶3-4.

Plaintiff's argument is undercut by his own filings.  All three of Plaintiff's claims arise from his time in observation in September 2018, yet he was able to successfully file an inmate complaint with respect to Claim #1 on September 21, 2018.  To the extent Plaintiff now claims that staff would not give him an inmate complaint or scrivening materials, he should have done what he did with Claim #1—filed when he was able and requested the filing be accepted late for good cause.  Toward that end, Plaintiff was still filing other inmate complaints related to the facts of this case six months later, in March 2019 and April 2019.  He therefore has no excuse for why he did not file an inmate complaint in connection with Claim #2 and Claim #3 at a later time when he was able.  Moreover, to the extent Plaintiff claims that he could only file one inmate complaint

per week, he could have staggered the filings based on priority and again articulated good cause for the tardy filings. But Plaintiff never even *attempted* to file any inmate complaints in connection with Claim #2 and Claim #3; therefore, the Court is satisfied that he failed to exhaust administrative remedies with respect to those claims. Accordingly, Claim #2 and Claim #3 are dismissed from the case without prejudice, and Defendants Martinez, Deblanc, Vollmer, Theander, Gruber, and Griffith are also dismissed from this case.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' motion for summary judgment based on failure to exhaust administrative remedies (Dkt. No. 22) is **GRANTED in part** and **DENIED in part.** The motion is denied with respect to Claim #1; and granted with respect to Claim #2 and Claim #3. Defendants Alexia Martinez, Kristina Deblanc, Angus Vollmer, Craig Theander, Devona Gruber, and Gayle Griffith are **DISMISSED** from this case.

**IT IS FURTHER ORDERED** that the stay on discovery is **LIFTED**. Discovery is reopened until **January 9, 2023**; and dispositive motions on the merits are due **February 9, 2023**.

Dated at Green Bay, Wisconsin this 10th day of November, 2022.

s/ William C. Griesbach
William C. Griesbach
United States District Judge